Vincent C. Bruce, #J84086
P.B.S.P. D6-101
P.O. Box 7500
Crescent City, CA 95532
PRO SE



FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT C. BRUCE,<br> plaintiff,<br><br>v.<br><br>MATTHEW CATE, et.al.,<br> defendants. | No. 3:09 cv-04649 JW<br><br>PLAINTIFF'S REPLY TO<br>DEFENDANTS' OPPOSITION<br>TO PLAINTIFF'S CROSS<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT |

## PRELIMINARY STATEMENT

Plaintiff received defendants' Opposition
To Plaintiff's Request For Partial Summary Judg-
ment on October 27, 2011 and submits this
Reply to that opposition.

Respectfully submitted,

Dated: November 8, 2011

Vincent C. Bruce
Plaintiff

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . 2

II. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT
AS DEFENDANTS FAILED TO REFUTE THAT LEGAL
MAIL REQUIREMENTS ARE APPLIED IN AN
ARBITRARY AND UNREASONABLE MANNER . . . . . 3

III THE ABSENCE OF A GENUINE ISSUE OF FACT ON
DEFENDANTS' INITIAL AND FALSE RETALIATORY
ACCUSATION OF GANG ACTIVITY ENTITLES
PLAINTIFF TO PARTIAL SUMMARY JUDGMENT ON
THE RETALIATION FOR PREVIOUS LITIGATION CLAIM . . . 12

IV. DEFENDANTS FAILED TO ESTABLISH A GENUINE
ISSUE ON THE DEPRIVATION OF PROCEDURAL
DUE PROCESS REQUIRED BY THE BRUCE V.
YLST SETTLEMENT AGREEMENT AND PARTIAL
SUMMARY JUDGMENT IS APPROPIATE . . . . . . 18

V CONCLUSION . . . . . . . . . . . . . 23

# I.
# INTRODUCTION

Plaintiff contends the defendants failed to establish a genuine issue of fact on the legal mail Censorship claim, the Retaliation for Previous Litigation Claim and the Procedural Due Process Claim, and plaintiff is entitled to partial summary judgment on these three claims.

## II

PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS
DEFENDANTS FAILED TO REFUTE THAT LEGAL MAIL
REQUIREMENTS ARE APPLIED IN AN ARBITRARY
AND UNREASONABLE MANNER

A. Plaintiffs Motion For Partial Summary Judgment
On The Legal Mail Censorship Claim

Plaintiff moved for partial summary judg-
ment contending that : (One) the confidential
mail address requirements are applied in an
arbitrary and preferential manner that exclud-
es certain attorneys from complying with the
section 3143 of defendants regulations (such as
attorneys who represent CDCR); (Two) It is un-
reasonable and an exaggerated response ' to any
alleged penological interest to open mail from
attorneys outside of plaintiffs' and read it in
its entirety more than once when it clearly con-
tains privileged communications from an identifi-
able attorney, just because the address does not
meet precise section 3143 requirements, (see
e.g Bruce's Sixth Decl., para 3 - attached to Pls' Brief
In Opp). And it is definitely unreasonable not
to return-to-sender such mail (unopened) as they
do other inadequately addressed mail.

<u>B. Defendants' Opposition Offered No
Evidence Showing A Valid Rational Connection To
Their Applied Legal Mail Policy And Legitimate
Interests.</u>

Defendants bear the burden of initially set-
ting forth a 'common sense' connection between
its policy and a legitimate penal interest, but
when the plaintiff presents evidence that refutes
the connection, the state must present "counter-
evidence to show the connection is not so remote
as to render the policy arbitrary or irrational",
<u>Clement v. CDCR</u>, 220 F. Supp. 2d 1098, 1109 (N.D.
Cal. 2002)

In their Opposition defendants did
not introduce any evidence justifying the way
they apply their mail policy, just as they offered
no evidence in support of their motion for sum-
mary judgment, (on the legal mail claim).

Defendants argue there is a clear penologi-
cal interest in requiring attorneys sending confi-
dential correspondence to inmates to properly
identify themselves (Defs'Opp. p. 7), and claim
plaintiffs' evidence "appears" to show the address
requirements were applied appropiately, (Id.)

- 4 -

C. The Undisputed Material Facts Refute
Defendants' Unsupported Arguments.

Contrary to defendants arguments the
following undisputed facts [1] show arbitrary
application of section 3143 requirements:

(i) Defendant Silva's admissions that attor-
neys from the Attorney General's Office and Office
of District Attorney are excused from section 3143
address requirements (Bruce 4th, para. 16)

(ii) Constance Picciano, an attorney employed
by the Calif. Attorney General who is representing
prison officials in plaintiff's other civil case, has
sent over a dozen mailings to plaintiff which
are treated as confidential attorney mail despite
the ommission ~~eee~~ of her name and title
(Bruce 4th, Decl. para. 17, Ex. mmm); see also Pl's
~~Reg. for Jed. Not For Reply~~ Pl's Decl. In Supp. of Reply;

(iii) However, Gary Gross, an attorney employ-
ed by Los Angeles County Counsel addressed his
attorney mail to the plaintiff in the same

[1] Plaintiff only mention facts here relevant to Defendants
Opposition arguments. Other relevant facts are contained in Pl's
statement of Facts, paras 85-97, and Bruces Fourth And Sixth
Declarations (6th Decl. is attached to Pl's Brief In Opposition, etc.)
[2] Plaintiff was in the prior custody of L.A. County (Bruce's 4th, Ex.JJJ)

-5-

way as Ms. Picciano's mail (office and return
address) yet Mr. Gross' Mail was repeatedly opened
and read outside plaintiffs' presence despite clear-
ly containing privileged attorney communications
(Bruce 4th, paras 10, 11, 32, EXS III-JJJ; see also
Pls' Stmt Of Facts, para. 85);

    (iv) PBSP rigidly applies the "title" require-
ment to non-preferential attorneys while excus-
ing preferred attorneys such as counsel Matthew
Roman who represents prison officials in this
case. For example when the prison opened mail
from attorney Adam Cook, Esq." they said that
they could not find a listing for him, and they
also said "Esq." does not denote an attorney
(Pls' Fourth Decl. EXS KKK, HHH)[3] However,
Mr. Roman always uses Esq. and his mail is
treated as confidential mail (Bruce Fourth, par. 18).

_____

[3] The "title" portion of section 3143 as applied by PBSP
is very important in this instance, because if PBSP recognized
"Esq." as denoting an attorney, they would have to hold the
mail unopened until Mr. Cook provides notarized proof of
his licence to practice law (D.O.M SUPP. 54010.12.3 (p. 17)
Bruce 4th, EX. GGG) but since "Esq." is not a title they can
treat it as regular mail (D.O.M supp. 54010.12.3 (p. 16).

Defendants relying on <u>Wolff v. McDonnell</u>, 418
U.S. 539 (1974) argue their is a penological interest
in requiring attorneys to identify themselves. This
argument is inadequate to show that they way
the prison applies the section 3143 requirements
is both legitimate and nuetral as required
under <u>Turner v. Safley</u>. Defendants opposition
is inadequate for the following reasons:

(i) Defendants proffered no evidence of the
reasons for the change of confidential mail require-
ments or that the concerns in the thirty-seven year
old <u>Wolff v. Mc Donnel</u> case was the impetus for the
change in requirements;

(ii) Defendants proffered no justification for
the preferential application of section 3143 require-
ments

(iii) Defendants proffer no evidence justifying
rigid application of section 3143 requirements when
they recognize mail is from a legitimate
attorney [4] (see e.g. <u>Burt v. Carlson</u>, 752 F.Supp 346,

[4]
For example defendants opened mail from Rebecca Rose Lynch
that contained her name, law firm and return address (see
Bruce's Fourth Decl. EX. HHH and Bruce's Sixth Decl. paras 3-4)

349 (C.D.Col 1990) (finding that the practice of
opening legal mail outside the inmates presence
because the identification on the envelope differs
slightly from prescribed requirements "is an unece-
ssarily strict regulation"); and

(iv) Defendants offered no justification
for opening the mail outside plaintiffs' pre-
sence and reading it in its entirety, even though
upon opening the mail they see it contains more
than sufficient identifying information to
verify it is from a legitimate attorney.

Additionally, defendants in their Reply
to plaintiffs' Opposition, do not deny that
the mailing from Rebecca Gose Lynch was
not adequately addressed [5] rather the defen-
dants alleged (without any supporting evid-
ence) that attorney Gose Lynch was inactive.
Their claim is meritless. Ms Gose Lynch was
registered in the January 2009 Calif. Directory
of Attorneys, see Pls' Decl. In Support Of Reply,
para 3 ).

_____
[5] The mailings' envelope contained her full name, law firm and return
address (Bruce 4th Decl, Ex. HHH)

-8-

## D. The Prison's Intrusive Application of the Confidential Mail Address Requirements Fail Under Turner v. Safely Factors

### (1) LACK OF A VALID, NUETRAL CONNECTION.

Under the first factor of *Turner v. Safely*, 482 U.S. 78 (1987) defendants must show a valid rational connection between its policy (or practices) and a legitimate interest, *Clement v. CDCR*, 220 F. Supp 2d at 1109. If their policy is not even applied or is not neutral it fails automatically (see. eg *Prison Legal News v. Cook* 238 F.3d 1145, 1150 (9th Cir-2001; *Shaw v. Murphy*, 532 U.S. 223, 228 (2001).

The prison's practice of preferentially applying the section 3143 requirements invalidates the practice in light of the fact defendants would not or could not offer justification for the arbitrary application [5].

Defendants advanced no justification for reading the privileged communications in their entirety (at least twice) [6] even when the opening of the

[6] The first thing the Security Sgood officer reading the mail would see is the attorney's information, but he reads it anyway and processes it as non-confidential mail where it will be read again by housing unit staff before delivery to plaintiff, (Pl's stmt of Facts, par. 85)

-9-

privileged mail reveals attorneys, name, title, license
number and return address and telephone number as
well as documents stamped privileged (Bruce 4th,
paras 9-10, Exs. III).

Even if defendants arguments could be seen to
have some connection to a legitimate interest, the
connection must be a close fit under the heightened
scrutiny applied to legal mail censorship, see <u>Sallier
v. Brooks</u>, 343 F.3d 868, 874 (6th Cir. 2003)

(2) <u>Plaintiff's Lack Of A Reasonable Alternative</u>
Plaintiff is in PBSP SHU which does not give
SHU inmates telephone calls (See e.g. <u>CCR</u> 3282 (b).
And the remote distance of PBSP makes attorney
visits unlikely. And plaintiff has no protection
against inadvertently addressed attorney mail which
does not meet section 3143 requirements. Plaintiff
does not always know when an attorney will write him,
or who that attorney may be, (see Pls Decl.-Reply, para 3)

(3) <u>Returning Attorney Mail Containing Incomplete
Address Will Have No Impact On Resources</u>
Mailroom staff are already trained to
recognize mail from attorneys whether it meets

-10-

section 3143 requirements or not (Bruce 6th, para. 4) and already return mail not having inmates complete identification information (Bruce 4th, para. 28. ~~Reg for Ted not = Mondayey~~ (see D.O.M Supp-54010 (p.31). Thus returning mail to attorney un-opened that does not meet section 3143 will not adversely impact resources or staff.

Pl; Decl. In Supp. of Reply

(4) Available Alternatives To Challenged Practice That Show An Exaggerated Response.

First, prison officials could easily require all agencies and <u>attorneys</u> to comply with section 3143 to eliminate preferential treatment.

Secondly, PBSP could return-to-sender any mail with an incomplete attorney address, as they return mail with incomplete inmate information. Such a remedy protects the prisons' interests and the plaintiffs' and attorneys' First Amendment communications.[2]

CONCLUSION

It is clear that defendants have not met

_____

[2] Returned-to-sender mail would remain unopened and could be stamped with address requirements.

-11-

their burden under the heightened scrutiny that is applied to legal mail censorship. Plaintiff requests the court grant summary judgment for the above-mentioned reasons.

## III

THE ABSENCE OF A GENUINE ISSUE OF FACT ON DEFEN-DANTS' INITIAL FALSE AND RETALIATORY ACCUSATION OF GANG ACTIVITY ENTITLES PLAINTIFF TO SUMMARY JUDGMENT ON THE RETALIATION FOR PREVIOUS LITIGATION CLAIM.

A. The Motion For Partial Summary Judgment Is Based On Defendants' Initial Accusation That Plaintiff's Previous Litigation Was Gang Activity

Plaintiff brought three seperate claims for retaliation in his Complaint [9]. The motion for part-ial judgment is based on the claim that defendants retaliated against him for his previous litigation, which is protected under the First Amendment. The substance of that claim is that defendants Turmezei and Gentry concluded an eight month gang inves-

---

[9] Plaintiff alleged defendants retaliated against him for litigation, for grievances and legal assistance to other inmates, Comp. pp. 18)

- 12 -

<u>tigation with the accusation that plaintiff obtained</u> <u>his inactive BGF associate status by lying in court</u> <u>and manipulating the court system.</u> Defendants admitted in their Answer to plaintiff's Complaint and discovery that they identified this conduct as BGF gang activity and initiated revalidation proceedings against plaintiff, but in an underground review, defendant Ruff rejected the information.

Plaintiff introduced uncontroverted evidence that showed the allegation was false including the following facts:

(i) Plaintiff obtained his inactive status in 2001 based on an IGI finding of no involvement in gang activity for "well over six years" [9];

(ii) Plaintiff never appeared in court during the entire case;

(iii) Inactive status was never an issue in plaintiff's case (Bruce v Ylst); and

(iv) And the only favorable outcomes, came as a result of appointment of counsel in the civil lawsuit, (see e.g. Pl's Brief In Opp/ for Port. Judg., pp. 8-10).

---

[9] In actuality, there is no specific allegation of gang activity for over fourteen years (from 1987 to 2001) Pl's Stmt of facts, para. 14).

Additionally, plaintiff showed that defendants regulations prohibited them from taking adverse action based on an inmate's litigation or even alleged abuse of court process.

This initial accusation of gang activity by defendants Turmezei and Gentry, irregardless if it was used in the later revalidation [10] constitutes a complete retaliation claim under *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) and *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 1990)

Plaintiff briefly pointed out why the five elements were met under retaliation law (Pls' Brief, pp. 10-11).

B. <u>Defendants' Opposition Fails To Establish A Genuine Issue On The Initial False And Retaliatory Accusation</u>.

In their Opposition defendants adopted a see-no-evil approach and did not

---

[10] The actual memorandum dated 3-08-07 that contains the retaliatory allegation was actually used in plaintiffs' revalidation although the information disclosed was altered to conceal the retaliation (see Pls' Stmt. of Facts, para. 75), but this is immaterial to the initial accusation.

-14-

address defendants Turnezei and Gentry's initial
false accusation of gang activity [11], including
failing to introduce any evidence on that claim.

   Instead, defendants attempt to mischaracter-
ize plaintiff's partial summary judgment claim as
being based on the "revalidation" of plaintiff that
took place six to eight months after the initial vali-
dation attempt. All of defendants evidence that
suggest no retaliation is directed at the final
gang investigation and revalidation, and is imma-
terial to the initial accusation of gang activity. [12]

   C. Summary Judgment Against Defendants
      Turnezei and Gentry Is Appropriate
         Partial summary judgment may be granted

---

[11] Defendants probably could not plausibly refute the initial
accusation as it is based on irrefutable CDCR and court records
plus defendants admissions and Answer To Complaint.
[12] Plaintiff still has a full and seperate claim against defen-
dants Turnezei and Gentry for the later revalidation (as the
actual memorandums used will reference plaintiff's protected con-
duct) but this initial accusation represents a full and complete
claim under Hines v. Gomez, 108 F.3d 265.

as to any defendants, (see e.g. <u>Ziemba v. Armstrong</u>
430 F.3d 623 (2nd Cir. 2005). A "complete failure
of proof concerning an essential element of the
non-moving party's case necessarily renders all other
facts immaterial", <u>Celotex Corp. v. Catrett</u>, 417
U.S. 317, 322-23 (1986).

As defendants failed to introduce any evi-
dence regarding the initial false and retaliatory
accusation ~~which~~ this entitles plaintiff to partial
summary judgment against defendants Gentry
and Turmezei.

The five elements of retaliation under
<u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th
Cir. 2005) have been met.

It is undisputed that defendants took
adverse action against plaintiff for his protected
conduct (previous litigation). And that adverse
action (false and retaliatory accusation of prison
gang activity combined with attempt to revali-
date plaintiff) not only is severe [13] but is

---

[13] This accusation carries the harshest punishment CDCR can
mete out; a minimum of six years in ad seg, by contrast an inmate
who murders a guard faces five years, (<u>CCR</u>, 3341.5 (c)(2)(5), 2(9)).

very chilling as it threatens to inhibit use of the most critical of First Amendment rights – Access To Courts – by which all other constitutional rights are vindicated.

Additionally, adverse action is shown by the cancelation of plaintiffs' transfer to general population of another prison directly due to this retaliatory and false accusation of gang activity, and defendants Turmezei's and Gentry's failure to properly document their findings and review as required by regulations (see Bruce's Second Decl. paras. 5, 6, 7, 11, 12).

Defendants cannot show a penological interest because prison officials own regulations prohibit taking adverse action for plaintiffs' litigation [14] and the investigators may not rely on information that is incorrect or misleading (see Berkler Disc. Adm. No. 8) and it is irrational to suggest plaintiffs' litigation can be considered as prison gang activity.

Thus, this court should grant partial summary judgment against defendants Turmezei and Gentry.

---

[14] See D.O.M. section 14010.19 (Pltf Req For Jud. Not. Ex. A); and see CCR, sec. 3160(a).

-17-

## IV

DEFENDANTS FAILED TO ESTABLISH A GENUINE ISSUE
ON THE DEPRIVATION OF PROCEDURAL DUE PROCESS
REQUIRED BY THE BRUCE V. YIST SETTLEMENT
AGREEMENT AND PARTIAL JUDGMENT IS APPROPIATE

A. Plaintiffs' Partial Summary Judgment Request
Is Based On A Violation Of The Settlement Agree-
ment.

Plaintiff moved for partial judgment on the
deprivation of procedural due process required
by the _Bruce v. Yist_ Settlement Agreement (Bruce
Settlement) ▬. As defendants concede [15], CDCR
in the event the gang revalidation process is initiat-
ed against plaintiff, ▬▬ CDCR must comply with
their own validation criteria and due process pro-
cedures, as well as those set forth in the _Castillo
v. Terhune_ (Alameida) Settlement Agreement, then
a thorough review of the proposed revalidation must
take place to ensure all criteria and procedural

---

[15] Defendants conceded in their Reply To Plaintiffs Opposi-
tion and their Answer To Complaint the Bruce Settlement
governs what due process is required (see pg. 20, herein)

protections were complied with.

CDCR has a two tiered gang validation process involving the IGI's investigation into and identification of an inmates gang involvement/activity and the review of that identification by the office of Correctional Safety. Once the validation process is initiated certain procedural safeguards are required including written, notice, written findings and disclosure of findings or information to be used and opportunity for rebuttal. Some of the safeguards must be provided within specific time frames but all must take place in a certain prescribed order. These procedures are described in plaintiffs' Statement Of Facts, paras 16-30, (also see Pl's Brief In Opp/ Part. Summ J. pp. 11-15) [16]

As set forth in plaintiffs' Brief (In Opp.) defendants violated nearly every procedural safeguard in the validation-regulations and procedures, some safeguards were violated multiple times during the underground reviews which took place.

---

[16] Plaintiffs' motion for partial judgment on this claim is based on the same facts as plaintiffs' opposition to summary judgment, (Brief, p 15)

-19-

**B.** Defendants Failed To Introduce Any Evidence Disputing Plaintiff's Facts Showing Defendants Failure To Comply With CDCR Validation Procedures

Defendants filed an Opposition to plaintiffs' motion for partial summary judgment incorporating their motion for summary judgment and defendants' Reply to plaintiffs' opposition, (Defs' Opp. p.6)

Defendants concede in their Reply To Pls' Opposition (at p.5) that the Bruce Settlement requires defendants to provide the procedural protections in their own validation regulations and procedures. This was also admitted in defendants Answer To Complaint (para. 30).

Defendants argue in their brief in opposition that plaintiff is only entitled to an informal non-adversary hearing, notice of charges and an opportunity to present views (Defs' Opp. p.6). But defendants have already conceded the Bruce Settlement governs what protections are provided to plaintiff.

Defendants argue, but present no evidence, that CDCR validation procedures were complied with. The only evidence they present regarding

due process is the disclosure of source items to
plaintiff in December 2007, opportunity for
rebuttal, and submission of part of the valida-
tion package to OCS [17]

Defendants attempt to argue that the
underground validation reviews by the IGI
and OCS conducted multiple times between
March and December 2007 were conducted
pursuant to the Bruce Settlement. Defendants
produced no evidence supporting this unsworn
claim.

As set forth below defendants arguments
have no merit.


C. The Undisputed Evidence Shows Defendants
Failed To Comply With Their Own Validation
Procedures And Summary Judgment Is Appropri-
ate On The Deprivation Of Due Process.

The evidence is undisputed that the
defendants did not follow their own validation
procedures and failed to document IGI

---

[17] Gang investigators disclosed nine source items (Pltf's Facts,
para. 68), but only six were documented in the validation
chrono (Tramory Decl. Ex.C).

- 21 -

reviews, findings and provide written notice to
plaintiff at the first steps of the multiple gang
investigations. And that the IGI and OCS con-
ducted unauthorized underground validation re-
views where evidentiary findings were made, but
not documented so the IGI could alter and re-
submit rejected evidence. [18]

As to defendants claim the underground reviews
were conducted pursuant to the Bruce Settlement,
this argument is meritless for the following reasons:
(i) Defendants submitted no evidence supporting
this contention;
(ii) The evidentiary record shows the under-
ground reviews began several years before the
Bruce Settlement;
(iii) The Bruce Settlement anticipates the "thorough
review" will take place after the due process
protections are provided and criteria are alleged
to have been met — most likely at the OCS

---

[18] The deprivation of written findings is substantial. The
documentation of the decisionmaker's reasons "guards against
arbitrary decisionmaking while also providing the inmate a basis for
objection before the next decisionmaker or... classification review,
WILKINSON v. AUSTIN, 545 U.S. 209, 226 (2005).

validation review; and

(iv) it would be an unreasonable and unfair interpretation of the Bruce Settlement to suggest it authorizes the deprivation of procedural safeguards every other inmate undergoing the validation process is entitled to.

As explained in plaintiffs' Brief, the deprivations were substantial and clearly violated the procedural protections plaintiff was entitled to and plaintiff urges the court to grant summary judgment on this claim.

## V

### CONCLUSION OF REPLY

Plaintiff is not an attorney and doesn't have a good grasp of the appropriate legal principles and procedures involved in this issue, but plaintiff was targeted by the IGI and actions attributed to him that never occurred, and plaintiffs validation was handled arbitrarily so partial summary judgment should be entered on not only the legal mail claim but also the retaliation and due process claims.

Dated. Nov. 7, 2011

Respectfully submitted,

V— + C. R—

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _____ _Vincent C. Bruce_ _____, declare:

I am over 18 years of age and a party to this action. I am a resident of _____

_____ _Pelican Bay State_ _____Prison,

in the county of _____ _Del Norte_ _____.

State of California. My prison address is: _____ _P.B.S.P  D6-101,  P.O. Box_ ,

_7500  Crescent City, CA 95532_ _____.

On _____ _November 9, 2011_ _____,
(DATE)

I served the attached: _____ _Pli' Reply To Defendents opposition To_ _____

_Summ. J._ _____
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

Matthew Roman
Attorney At Law
180 Grand Ave., Suite 225
Oakland, CA  94612

I declare under penalty of perjury under the laws of the United States of America that the foregoing

is true and correct.

Executed on _Nov. 9, 2011_ _____ _____
(DATE)                              (DECLARANT'S SIGNATURE)

Civ-69 (Rev. 9/97)                                              ::ODMA\PCDOCS\WORDPERFECT\22832\1
-9-

25

NAME  *Vincent C. Bruce*
CDC NO. *J84086*   HOUSING *D6 - 101*

**PELICAN BAY STATE PRISON**
**SHU LAW LIBRARY**
**PO BOX 7500**
**CRESCENT CITY, CA. 95532**

# LEGAL MAII

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532

FIRST CLASS





UNITED STATES POSTAGE

PITNEY BOWES

02 1M
0008005994
$ 01.88°
NOV 14 2011
MAILED FROM ZIP CODE 95531

U.S. Northern Dist. of Ca.
U.S. Courthouse
450 Golden Gate Ave.
San Francisco, Ca. 94102-3483

11 - 9 - 11

C/o R Turner
46854